**FITZGERALD, Plaintiff-Appellee, v. CHEMICAL SERVICE CORP., Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 7006.   Decided November 22, 1948.

Kunkel & Kunkel, Cincinnati, for plaintiff-appellee.
Harmon, Colston, Goldsmith & Hoadly, Cincinnati, for defendant-appellant.

## OPINION

By ROSS, J.:

This is an appeal on questions of law from a judgment of the court of common pleas of Hamilton County in favor of plaintiff, entered in conformity to a verdict.

The defendant claims the trial court committed error in dismissing from the consideration of the jury its affirmative defense, in assuming as proved a fact, which was, on the contrary, a factual issue, in carrying this error into its general charge, in refusing a special charge tendered by the defendant placing such factual issue before the jury, and refusing a special interrogatory presented for the purpose of securing an answer from the jury upon such question of fact.

The defendant also claims the court committed error by injecting into the case in its general charge the question of whether the defendant's employee was driving at a speed permitting the stopping of the vehicle involved in the assured clear distance ahead, when such question was not raised by the evidence.

The defendant also claims the verdict is against the weight of the evidence.

In the petition it is alleged that the defendant is a corporation "organized and existing under the laws of the State of Ohio," that the defendant through its employee acting within the scope of his employment with defendant caused injury to the plaintiff, also an employee of defendant, by and through the negligent operation of an automobile in which the plaintiff was being conveyed for the purpose of carrying on the business of the defendant. One of the specifications of negligence charged against the defendant was that its employee operated the automobile at a rate of speed which would not permit it to be stopped within the assured clear distance ahead.

In the first defense of the answer it is admitted that the defendant is a corporation, as alleged; that the plaintiff on the 16th of April, 1945, was riding in an automobile driven by another employee of defendant, over one of the roads in Ohio, and that at such time the plaintiff was engaged in promoting the defendant's business. Otherwise, the first defense constitutes a general denial.

For its second defense, the defendant asserts that the plaintiff was a resident of Kansas City, Missouri, on the 16th day of April, 1945, that he was employed by the defendant under a contract of employment in the State of Missouri, that both plaintiff and defendant had elected to accept the provisions of the Workman's Compensation Act of Missouri, that the defendant employed more than ten employees regularly in and about its business, that plaintiff at the time of his injury was engaged upon the business of defendant and was temporarily in the State of Ohio while so engaged, that the plaintiff has no common law right of action against the defendant by virtue of §1465-68 GC, being a resident of Missouri, and insured under the Workmen's Compensation Act of that State, that the Court therefore has no jurisdiction of the subject-matter of this action.

In a reply to the second defense, the plaintiff denied he was a resident of Missouri on April 16, 1945, and that he was employed by the defendant under a contract of employment executed in the State of Missouri, and that he was in transit from his place of employment in Kansas City, Missouri, to the City of Cincinnati, and from thence to Detroit, Michigan, when injured as alleged in the petition. Otherwise, the reply constitutes a general denial of the affirmative allegations of the second defense of the answer.

In view of the claimed error, and the sharp conflicts in the allegations in the pleadings, it is necessary to relate at some length just what the evidence develops on the questions presented.

Alex Bartel, president of the defendant corporation, was called as if on cross-examination by plaintiff. He stated the defendant was engaged in business in Michigan, Missouri, and Ohio on April 16, 1945, the date on which plaintiff was injured; that the Company did not carry Workmen's Compensation Insurance in Ohio "because we did not have the proper employees, the proper number of employees in Ohio, but two."

The plaintiff testified that in February, 1945 he was working for the defendant, that he was a motorcycle officer in Kansas City with the police department, that when he was excused from duty he had worked for the defendant **for two years,** that he started working for defendant in **November, 1944,** (plaintiff probably meant 1943), that in September, 1944, while plaintiff was still in the employ of the defendant, through Alex Bartel, it was suggested he go to Detroit, Michigan, and take charge of the office of the defendant in that City, that plaintiff stated he did not wish to go to Detroit, that he wanted to stay in Kansas City, and that Bartel stated "the office wasn't doing enough to give me the guaranty up there which Detroit would do and they were going to sublet the office down here," that Lou Bartel called him on the telephone for Cincinnati, in November, 1945 (while still in the employ of defendant) and again suggested he go to Detroit, that the type of work in which he was engaged for the defendant was "cleaning the kitchen exhaust system, air condition systems, fire hazards," that he was supposed to be a supervisor in Detroit, but that when he went there he was just a laborer, that about the middle of February, 1945 he went to Detroit to look over the job, that he had a two weeks' leave from his job on the police force, that after looking over the Detroit office he came from Detroit to Cincinnati about the last of February, 1945, that while in Detroit he did some work for the defendant, that when he arrived in Cincinnati about the 25th of February, 1945, it was then, in Cincinnati, that he had a conference with Al Bartel, Lou Bartel and Sol Shuller, that then the proposition was made plaintiff to take a position in the Detroit office upon certain definite terms, which he then and there accepted, that he was to receive fifty dollars a week and three dollars expenses on the road, that plaintiff then returned to Kansas City, gave

the Police Department notice of resignation, and returned to Detroit April 2, 1945, when he continued to work for the defendant, that he left Detroit, doing work for the defendant on the way down to Cincinnati, and did work for the defendant on several jobs in Cincinnati, that on the 16th of April he started back to Detroit and was to do certain work for the defendant on the way back, that the plaintiff and a fellow employee, by name of Owens, rode in an automobile driven by Shuller, an employee of defendant, that it was necessary to go by way of Columbus because the truck driven by plaintiff was in a wreck and had been left there for repairs, that Shuller on the return to Detroit was driving at a high rate of speed, sixty to sixty-five miles per hour, on a rainy night and down-grade around a sharp "S" curve, when the automobile swerved, skidded, turned around, went out of control and struck a tree, and the plaintiff lost consciousness, that after his discharge from the hospital he left the employ of the defendant sometime in November, 1945, **and returned to Kansas City, Missouri.**

The plaintiff further testified:

"Q. I will reframe the question. Did you, when you went to work for the company, the defendant in this case in Kansas City, which you have testified you did, choose to take the benefits of the Missouri Workmen's Compensation Law?

"A. No, I did not.

"Q. You did not?

"A. No, in fact I didn't even know they had any such thing.

"Q. Do they?

"A. I know the State had it but I didn't know the company here had it.

"Q. You knew the company had ten or more employees there at that time, didn't you?

"A. In Kansas City?

"Q. Yes.

"A. No they did not.

"Q. How many did they have?

"A. They had—the biggest amount they ever had at one time, and that was even when I was talking to him about sending out here for them, wasn't over five.

"Q. Not over five?

"A. Never did have ten at any place I know of.

"Q. Never had ten and only had five?

"A. That is right, five to six men when I was breaking them in for them.

"Q. Did you ever make claim for the injury which you have alleged in this case to the Missouri Workmen's Compensation Board?"

MR. KUNKEL: Objection.

"A. No."

THE COURT: Overruled.

MR. KUNKEL: Exception.

"Q. You didn't?

"A. No."

Al Bartel, a brother-in-law of Sol Shuller, in charge of the defendant's Detroit office, testified for defendant that no agreement as to terms of employment at the Detroit office was made in Cincinnati in the early part of the year 1945, and that no definite agreement was made then and there with plaintiff as to the Detroit employment, that at the place where the accident occurred the road makes a "real wide sweeping curve—very wide. It is a very wide curve where you can see from every angle of it because there is no hills. It is level country." That when he tried to drive around the curve, the steering wheel turned in his hands and he had no brakes. On cross-examination, the witness stated that the plaintiff agreed to take the job in Detroit when he came to Cincinnati in the latter part of February, 1945. The witness further mentioned three employees working in Ohio on various jobs in addition to work done by himself and the plaintiff.

Alex Bartel testified for the defendant that he was president of the Company, that the plaintiff was employed September 3, 1943, and that he was hired at that time by the manager of the Kansas City office, as a part time employee, that in 1944, he discussed with plaintiff the idea of going to Detroit, to take over the supervision of the Detroit office, and that it was finally agreed in Kansas City that he should do so, that he would go to Detroit to see if he liked it or not, that he went to Detroit for this purpose in April, 1945, that at the meeting in Cincinnati it was understood that he had taken over his duties in Detroit and there was merely a general discussion of the business there in Detroit, and that on the 16th of April, it was understood he would return to Detroit and continue his work there, that after the accident the defendant moved plaintiff's family to Detroit, that only two employees were regularly employed in the State of Ohio, who were officers of the company, that the defendant had qualified to do business in Missouri, that five or six employees were employed in that state, that he did not think the defendant had elected to accept the provisions of the Workmen's Compensation Act

of Missouri, that the plaintiff had worked for the defendant from **September, 1943** to October, 1945, that at the time of his employment with the company he was a resident of Missouri. The witness, on being recalled, attempted to state that the defendant covered all employees wherever working by insurance under the Workmen's Compensation Act of Missouri, but his evidence was stricken from the record. Later, a policy of such insurance was admitted in evidence.

Neither this witness nor any other witness attempted to testify that the defendant had filed with the Commission in Missouri an election to accept the Workmen's Compensation Act of Missouri, or that the defendant had posted a notice to such effect in its place of business, as provided by Section 3693, R. S. of Missouri.

The plaintiff has predicated his action against the defendant upon his common law right to hold the defendant-employer responsible for the negligent acts of its employee, acting within the scope of his employment for the defendant, it being claimed by plaintiff that such acts were the proximate cause of the injury for which he seeks damages against the defendant. The Workman's Compensation Act of this or another State, under certain circumstances, frees the employer from such liability, and the Workmen's Compensation Act of this or another State may be interposed as an affirmative defense by an employer to such an action, if he can allege and prove that the necessary facts exist which free him from a duty to respond in damages under a common law duty to his employee. If he does not interpose such affirmative defense, or if he fails to prove the facts which sustain such defense, he must respond to the action of his employee for common law liability for negligence.

In this action, the defendant has alleged and at least attempted to prove facts, which it is claimed, show that the common law rights of the plaintiff have been abrogated in favor of his rights under the Workmen's Compensation Act of Missouri. The trial court excluded this affirmative defense from the consideration of the jury. This action was taken by the trial court upon the hypotheses that the defendant had failed to show that the contract of employment between plaintiff and defendant was made in Missouri. As will later appear, this conclusion of the trial court was not sustained by the evidence. However, it will appear hereinafter that the locus of the execution of the contract was not the only critical fact involved in the affirmative defense of this defendant, nor the only fact which the defendant was required

to prove in order to establish the applicability of the Workmen's Compensation Act of Missouri.

It is conceded that the defendant has not accepted or elected to take coverage for its employees under the Workmen's Compensation Law of Ohio. The evidence of the defendant is that it does not have three employees regularly employed in Ohio. Thus, that portion of §1465-68 GC, providing for agreements between employee and employer where the employer is subject to and has complied with the Ohio Workmen's Compensation Law has no application, first, because, the defendant-employer is not subject to the Ohio Act, and has not complied with its provisions; and, secondly, because there is no evidence of any agreement in respect thereto.

Sec. 1465-68 GC, supra, further provides, however, that if an employee is a resident of a State other than Ohio, "and is insured under the Workman's Compensation Act or similar Acts of a state other than this State" then the employee shall not receive benefits under the Workmen's Compensation Act of Ohio for injury received while temporarily employed therein, "and the rights of such employee and his dependents under the laws of such other State shall be the **exclusive** remedy against the employer on account of such injury." (Emphasis ours.)

At this point it may be well to note a pertinent section of the Revised Statutes of Missouri (which hereinafter will be designated R. S. Mo.). This is Section 3700, which provides in part:

"(b) This chapter shall apply to all injuries received in this state, regardless of where the contract of employment was made, and also to all injuries received outside of this state under contract of employment made in this state, unless the contract of employment in any case shall otherwise provide."

This court, as well as the trial court, by virtue of the provisions of §12102-31 GC, is required to take judicial notice of these general statutes of a sister state.

The burden rests, therefore, upon the defendant under the Ohio law (§1465-68 GC) to show (1) that plaintiff is a resident of a state other than Ohio, and (2) is insured under the Workman's Compensation Act of some other state than Ohio. Or, applied to the facts here involved, that (1) plaintiff is a resident of Missouri, (2) is insured under the Workmen's Compensation Act of Missouri.

One of the burdens of defendant under the Missouri law, to escape common law liability under the provisions of Section 3700 R. S. Mo., supra, is to show that the contract of employment with plaintiff was made in Missouri. If it was, and other pertinent provisions of the Act are proved to apply in favor of defendant, the plaintiff was covered by the provisions of the Workmen's Compensation Act of Missouri, and the defendant has sustained its affirmative defense, excluding it from the common law liability asserted by the plaintiff.

The evidence is conclusive that the plaintiff was not a resident of Ohio, and seems to indicate beyond question that plaintiff was a resident of Missouri at the time of his employment by defendant, being a member of the Police Department of Kansas City. There is no evidence that he ever adopted another domicile or residence, except as noted hereinbefore. This would leave the question under Ohio Law whether he also was insured under the law of Missouri.

Now it is apparent that this element of the defendant's defense, under the Missouri law, was predicated upon a showing that the contract of employment was made in Missouri.

The trial court found as a matter of law that the contract was made in Ohio. Even if "the contract" be limited to the new arrangement involving the Detroit office, the evidence was in violent conflict upon this point, and there was no justification for the trial court's finding even as to the Detroit arrangement. But it is clear there is not a single iota of evidence to show that the plaintiff's original employment, in 1943 and which employment continued on down until after his discharge from the hospital, when he returned to Kansas City and quit the employment of the defendant, was not the subject of an oral contract made in Kansas City, Missouri, at the beginning of his employment with the defendant. The plaintiff himself so states. He was constantly employed with the defendant doing jobs in the time not required for duty with the Police Department of Kansas City. The plaintiff himself states he thought he was to be a supervisor of the Detroit office, but found when he went there that in fact his duties were that of a common laborer. The mere fact that he was to receive more wages, devote all his time, change his location, or receive a different title could have no effect upon the oustanding conclusion that from 1943 to late 1945 he continued to be constantly an employee of defendant and that that employment originated in Kansas City, Missouri in 1943. That the locus of the agreement as to the new arrangement as to the Detroit office is in doubt can also have no effect upon this fact.

On this phase of the case the trial court was clearly in error in ignoring the conclusive evidence of the original 1943 employment of the plaintiff and its continuous course and in finding no conflict in the evidence upon the locus of the subsequent agreement which merely effected a change of location, wages, and title of position.

Even though the contract was made in Missouri, the defendant is not freed from the operation of other sections of the Missouri Workmen's Compensation Act, which became pertinent to the question still present—whether the plaintiff was covered by such Act.

The Missouri Workmen's Compensation Act provides for two classes of employers, major and minor. By Section 3692, R. S. Mo:, it is provided that:

"(a) A major employer shall mean an employer who has more than ten employees regularly employed.

"(b) A minor employer shall mean an employer who has ten or less employees regularly employed."

Now the statutes of Missouri provide generally (Section 3690 R. S. Mo.) that all employers and employees are amenable to the Act, subject to certain exceptions involving status and acts of the employers and employees. One of these exceptions is in favor of a minor employer. This exception is found in Section 3693, R. S. Mo., which in effect **excludes** minor employers from the operation of the Workmen's Compensation Act unless the employee has taken steps to have his employer declared engaged in a hazardous occupation (Section 3692 c. R. S. Mo.) or the employer elects by notice to the commission to be so covered, **and** publishes notice of such election in his place of business. There is no evidence in this case that the plaintiff employee ever served notice on the Commission that the defendant was engaged in a hazardous business; in fact plaintiff stated on the witness stand, as hereinbefore set out, that he had not chosen to take benefits under the Workmen's Compensation Act and "didn't even know they had any such thing."

The defendant disclaims any coverage in any manner by reason of being a minor employer, and there is no evidence that it even tried to take advantage of the coverage provisions in Section 3693 R. S. Mo.

It is clear from the record that not only did the defendant disclaim the status of a minor employer, realizing that if in

that status the plaintiff was not covered by the Workmen's Compensation Act of Missouri, but the defendant made strenuous efforts to prove that it was a major employer and, hence, amenable to and covered by the Act, by its policy of insurance introduced in evidence.

One of the officers of defendant attempted to state that it was covered by the Missouri Workmen's Compensation Act, but there was no attempt other than this statement of a conclusion of law, which was excluded from the evidence, to give evidence of the specific acts which would have brought the company within the protection of the Act. It is true a policy of insurance was introduced in evidence, but this policy only came into effect for the purposes of this case, as far as this case is concerned, if the defendant was responsible under the Workmen's Compensation Act.

If the employer was a minor employer, there is nothing in the eidence to show it was amenable to the Act, and that the plaintiff was covered.

Defendant in its brief states that it employed at least eleven employees. No reference to the bill of exceptions supporting this contention is given, and the facts do not sustain it, even if it be conceded the number of employees is not limited to those employed in Missouri.

Both plaintiff and an officer of defendant testified the defendant employed some five or six employees in Missouri. The defendant introduced evidence he employed not more than two in Ohio, and this is all the definite evidence on this question. There was evidence indicating that defendant handled a number of jobs in Michigan, Missouri, and Ohio, but how many employees were required to handle all of these jobs is left to conjecture. As far as the evidence goes, the eight employees might have handled all the jobs.

It is to be remembered that the burden constantly rested upon the defendant to prove its entire affirmative defense, and there must be some substantial evidence to sustain every portion of it or the court was not in error in excluding it.

The record has been carefully examined, searching for substantial evidence that defendant was a major employer, or, on the other hand, was not a minor employer, not covered by the Workmen's Compensation Act of Missouri. This, as indicated requires that there be substantial evidence of employment of more than ten employees. (Section 3692, R. S. Mo., supra.) The record fails to show any substantial evidence of such fact.

The ease with which such fact could have been proved, as, for instance, introduction of the records of the company show-

ing its pay rolls, coupled with the absence of such evidence is more than merely significant.

It must be concluded, therefore, that the trial court was correct in withdrawing this defense from the jury, and, consequently, committed no error in refusing to present to the jury the special charge and interrogatory predicated upon such affirmative defense. The fact that such action was predicated upon an erroneous view of the evidence is not material if other evidence, or the lack of material and relevant evidence justifies such action.

At the conclusion of all the evidence, the defendant made a motion for judgment. In ruling on this motion, the trial court stated:

"Now as to the second branch of the motion as to the jurisdiction of the Court, the facts show that this was an Ohio corporation with its principal office here in Ohio throughout all of this time and this Court is of the opinion that this contract of employment was made in Ohio. There is testimony of some telephone conversation with respect to the transfer to Detroit from Missouri where he had been employed over a period of time, but the business of making this contract, it seems to the Court, was conducted here in this State. Now the Court also finds as a matter of fact that this defendant company was employing three or more workmen in Ohio under the provisions of the Workmen's Compensation Act. Now the only question the Court had is whether or not there was a choice or an election of remedies. I did have the notion, whether there had been a compliance or not, and there was no compliance with the Workmen's Compensation Act in Ohio. I did have the notion that whether there was compliance or not, that any workman injured in the course of employment was bound to act under the Workmen's Compensation Act and file a claim with the Industrial Commission of Ohio; however, it seems the Court was in error on that as §1465-73 GC seems to cover that, so that as to the second ground of your motion that will be overruled, so the case will go to the jury on the question first, whether there was negligence as claimed on the part of the defendant and secondly, whether such negligence, if any, was the proximate cause."

Sec. 1465-73 GC, provides that certain employers who fail to comply with the Workmen's Compensation Act of Ohio shall be liable under their common law liability to employees.

The application of this section of the statutes must be considered with §1465-68 GC, supra, which provides that the employee is relegated to his rights under the laws of the state of the employee's residncee if the contract of employment was made outside of Ohio.

It will be noted that the Court found as an established fact that the defendant employed regularly three or more workmen.

An officer of the company testified that only two persons were regularly employed at the office of the company in Ohio, and that the defendant had not accepted the benefits of the Workmen's Compensation Act of Ohio.

The trial court was correct in stating that the evidence was conclusive to the effect that the defendant had in service more than three workmen regularly in its business. To escape liability under §1465-73 GC, supra, it was necessary for the defendant to bring itself within the purview of §1465-68 GC, supra. This it attempted and failed to do, as hereinbefore set forth.

Referring now to another claim of error assigned by the defendant, it appears from the bill of exceptions that the court stated to the jury in its general charge:

"The Legislature of our State has prepared a good many laws with respect to the operation of motor vehicles on the highways and streets of our state. It has provided that no person shall operate a vehicle, and by 'vehicle' is meant to include a motor vehicle, so as to endanger the life, limb or property of any person while in the lawful use of the streets or highways. No person shall operate a motor vehicle upon the streets and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface and width of the street or highway and of any other conditions then existing, and no person shall drive any motor vehicle in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."

And, again:

"Now this statute also uses the words 'assured clear distance ahead' in connection with the operation and control of an automobile. This language requires that the driver of an automobile have his automobile under such control that he will be able to stop said automobile before striking an

object either moving or stationary which is reasonably within his view. It does not however apply to objects projected suddenly into the driver's path or view.

"Now I should say to you that when the Legislature passes a law requiring the doing or not doing of a certain thing, the violation of that law is considered to be negligence in itself, that is negligence per se; so that you will take into consideration these laws or rules which I have read to you in determining the first issue which you must decide, whether or not the defendant was negligent as that term has been defined to you and in the manners claimed by the plaintiff."

There was no evidence in this case that there was any object in the path of the automobile if it had proceeded on the right hand side of the road around the curve. The object with which the vehicle collided was a post off the road and which was not within what is reasonably considered the assured clear distance ahead. Had the automobile remained on the road there was nothing to impede its progress no matter at what speed it was moving.

The question of assured clear distance ahead was not in the case. We are cited to no case justifying a charge upon the issue of assured clear distance ahead involving circumstances similar to those here considered, nor do we find any such case. On the contrary, it is apparent from the cases in which its use has been approved that it has no application to the instant case. **Gumley v. Cowman, 129 Oh St, 36; Kormos v. Cleveland Retail Credit Men's Co., 131 Oh St, 471; Smiley v. Spring Bed Co, 138 Oh St, 81; Thompson v. Kerr, 39 Abs, 113.**

Strictly speaking, the matter of the assured clear distance ahead was not an independent issue, but rather involved an act or course of conduct which might be considered negligence per se, and, therefore, sustain the specification of negligence pleaded.

The petition specifically charged violation of the assured clear distance ahead statute. The jury should have been instructed that there was no evidence sustaining this specification of negligence. On the contrary, in spite of the fact that such was the case, the jury were charged directly upon this specification of negligence. To charge upon an issue not presented by the evidence or upon facts not proved or upon a specification of negligence not sustained by evidence, constitutes error on the part of the trial court. **39 O. Jur, p. 952, "Trial", Section 267.**

The automobile of the defendant's employee collided with a post off the traveled part of the highway, and only after it

had left such traveled path and which would have been taken by the vehicle if it had not skidded off the road. The jury might well have concluded that some additional burden rested upon the defendant by reason of the presence of this post, and that the employee was guilty of negligence per se if he did not drive at a speed which under any circumstances would prevent collision with such post. If such negligence per se was thus established, the only other questions would be proximate cause and damages.

On the other hand, the jury might have had difficulty in finding mere negligence proven by reason of the conflicting evidence upon the speed of the car, and whether it was driven at a reasonable speed or not. Such being the case, it must be concluded that the injection of this specification of negligence into the case in the absence of any evidence justifying its presentation to the jury constitutes error, prejudicial to the defendant-appellant, requiring a reversal of the judgment of the trial court.

No other error is found in the record.

The judgment is reversed and the cause remanded for a new trial.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.